IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

**FILED MAR 16 2022**
CONNIE LADNER
CIRCUIT CLERK
BY_____ D.C.

JORDAN CARL and RACHEL CARL,
Individually, and on behalf of their minor
child, CALVIN CARL                                                                  PLAINTIFFS

VS.                                         CIVIL ACTION NO. A2401-2022-79

AMAZON.COM, INC.; and SHANDONG
NASEN ELECTRIC CO., LTD.
d/b/a GARDGUARD                                                                     DEFENDANTS

## COMPLAINT

(Jury Trial Requested)

COME NOW, Plaintiffs, Jordan and Rachel Carl, individually, and on behalf of their minor child, Calvin Carl (collectively, "the Carls"), and hereby file this Complaint for damages against Defendants, Amazon.com, Inc. and Shandong Nasen Electric Co., Ltd. d/b/a GardGuard, alleging as follows:

### PARTIES

1. Calvin Carl ("Calvin") is a minor resident of Harrison County, Mississippi.

2. Rachel Carl ("Rachel"), Calvin's mother, natural guardian, and next friend is an adult resident of Harrison County, Mississippi.

3. Jordan Carl ("Jordan"), Calvin's father, natural guardian, and next friend is an adult resident of Harrison County, Mississippi.

4. Amazon.com, Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon may be served with process via its Registered Agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

**EXHIBIT 1**

5. Shandong Nasen Electric Co., LTD d/b/a GardGuard ("Shandong") is a foreign corporation legally organized under the laws of China. Shandong may be served with process under Miss. R. Civ. P. 4(c)(5) and 4(d)(4) via its owner, Lin ZhenZhen, at 288 Jiangnan Avenue, Connbe Building 702, Hangzhou, Zhejiang 310000 (China) and/or at Lan Shan Qu, Mei Duo Xian Dai Cheng 8A Building 101, Linyi, Shandong 276000 (China). Said process to be transcribed from English to Simplified Chinese so as to further secure notice.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and subject matter pursuant to Miss. Code Ann. § 13-3-57. Venue is proper in this Court pursuant to Miss. Code Ann. § 11-11-3(1)(a)(i) and/or Miss. Code Ann. § 11-11-3(1)(b).

## BACKGROUND[1] AND APPLICABLE LAW

7. Products sold on Amazon's online marketplace (i.e., Amazon.com) fall into two general categories. In one category are products Amazon itself selects, buys from manufacturers or distributors, and sells to consumers at a price established by Amazon. In the second category are the products purportedly sold by third parties through Amazon's website and e-commerce platform—that is, as noted above, Amazon.com. The product listing for the two categories are often similar. The only distinction is that products not sold directly by Amazon include the words "Sold by" and the name of the third-party seller instead of Amazon.

8. To purchase a product sold on Amazon.com, the customer adds it to his or her Amazon cart. To complete the purchase, Amazon charges the customer's credit card or other payment method it has saved in its files. After Amazon accepts and collects the customer's payment, Amazon deducts and collects its commission and percentage-based fees from the third-

---

[1] As explained in *Bolger v. Amazon.com, LLC*, 267 Cal. Rptr. 3d 601, 606-609 (Cal. Ct. App. 4th Dist. 2020).

party seller for using Amazon's marketplace. Amazon then aggregates the remaining proceeds with those from other purchases, and remits them to the third-party seller on a scheduled basis.

9. Upon information and belief, Amazon's contractual relationship with its third-party sellers is governed by its Business Solutions Agreement ("BSA"), which Amazon requires all third-party sellers to accept. Under the BSA, a third-party seller must indemnify Amazon for any claims related to its products sold through Amazon. And, if its sales are above a certain threshold, a third-party seller must obtain general commercial liability insurance, listing Amazon as an additional named insured.

10. Some third-party sellers participate in the Fulfilled by Amazon ("FBA") program. The FBA program allows third-party sellers to reach Amazon customers on a global basis. Third-party sellers must submit an application to register any product included in the FBA program, and Amazon may refuse registration for various reasons. This service allows companies with products to sell to ship these products to Amazon's warehouses, where they are stored and presented for sale on Amazon.com. Once sold, Amazon packages the product in packaging with Amazon branding and/or Amazon-specific messaging and ships it to the customer. Thereafter, Amazon shares the customer's personal data and information with the third-party seller.

11. When returning an FBA product, the customer ships it back to Amazon—not the third-party seller. Amazon inspects the product and determines whether the product can be resold. If so, it will return it to the third-party seller's inventory at the Amazon warehouse. If not, the third-party seller can have it sent back to its own facilities.

12. In the FBA program, as recently explained by one e-commerce expert, "Amazon 'owns' the customer."[2] That is, Amazon owns and controls the relationship with the buyer—the

---

[2] *Id.* at 607.

company supplying products to the FBA program does not. In fact, the supplier has no direct relationship with the buyer and, in most cases, does not even have an indirect relationship with the buyer. Amazon decides itself whether to allow the transaction to go through. The FBA supplier simply discovers in a report or some other form of notification that a product has been sold to the buyer.

13. While in most cases there are no communications between the supplier and the buyer, on occasions when communications between FBA suppliers and buyers (or between FBA suppliers and potential buyers) is necessary, Amazon requires third-party sellers to use only the tools and methods designated by Amazon to communicate with customers. For instance, when a buyer has a problem with the product or a potential buyer has a pre-purchase question, any and all communication is anonymized. That is, Amazon provides a message console that sends messages between the two parties e-mail addresses, though neither party is provided with the other party's actual email address.

14. In operating a digital space for commerce that seamlessly connects its customers and buyers to third-party sellers and their products, Amazon serves as a facilitator. Clearly, its actions and undertakings, as described herein and will be proved at trial, place Amazon squarely within the distribution chain and therefore liable under the common law.

15. In Mississippi, "[t]o the extent such marketplaces are collecting something of value for providing their services, then common law liability should apply because such marketplaces are in the direct chain of commerce." *State Farm Fire and Cas. Co. v. Amazon.com, Inc.*, 414 F. Supp. 3d 870, 874 (N.D. Miss. 2019).

## FACTS

16. In March 2021, the Carls searched for and purchased an expandable water hose on Amazon.com—a digital marketplace operated by Amazon.

17. The water hose was allegedly manufactured by Shandong under the brand name GardGuard.

18. The GardGuard water hose was advertised, featured, promoted, and recommended to the Carls as "Amazon's Choice" for water hoses available for purchase on its marketplace—an endorsement and/or warranty on which the Carls relied, given Amazon's public commitment and assurance as to product safety.[3]

19. On May 17, 2021, Calvin (age 4) and his minor siblings were at their home in Gulfport, Mississippi playing outside with and/or near the GardGuard water hose. At some point, the water running through the hose was turned off. Unaware of the dangers associated with handling an expandable water hose without water inside it, the children released it—at which point, the hose suddenly, and without warning, snapped back and retracted in uncontrollable fashion and at a high rate of speed. The solid fitting on the end of the hose hit Calvin in his head, fracturing his skull, and causing him to be air-lifted to an out-of-state children's hospital for an emergency craniectomy and, eventually, a craniotomy for which additional surgeries and medical treatment have been and will continue to be necessary.

---

[3] "[W]e've got a ... product-safety process, and that starts from the very beginning. When a third-party seller signs up to sell on the platform, they have to agree to the [BSA], which contains very clearly language that says they have to sell products that meet all the compliance requirements for the jurisdictions that they're going to be selling the product in. Once products are being sold, we have a robust and active process to monitor for any customer complaints that come in. Regardless of the format that those come in, we track those, we log those, we report those things to [the Consumer Products Safety Commission]. And, depending on the severity of the scope, the frequency, variety of factors, we will decide whether or not we're going to continue to sell a particular product or not. And that's an ongoing process. That happens every single day for every single product on the website . . . ." Later, he stated, "You know, Amazon does everything in its power and goes above and beyond to make sure that we're providing the best customer experience, **including safe products.** And, you know, **I want that for all of our customers and for myself when I buy from Amazon, so I hope people believe that.**" *Id.* at 608-609 (emphasis added).

20.     The GardGuard water hose purchased by the Carls on Amazon contained no warnings, much less any warnings of notable child safety hazards and personal injury risks that accompanied its use and handling—specifically, the potential for the water hose to quickly snap back and retract when pulled and/or released without any water in the hose.

21.     Amazon knew or should have known that GardGuard's expandable water hoses did not contain any warnings or contained inadequate warnings of the notable dangers and child safety hazards described above. Despite this, Amazon actively featured, promoted and endorsed the water hose on its online marketplace, stimulated consumer demand for the water hose through various advertising and marketing techniques, and recommended and facilitated the sale and distribution of the water hose to the Carls—receiving compensation and/or commission at every stage.

22.     Moreover, although Amazon knew or should have known about the notable dangers and safety hazards associated with handling expandable water hoses not filled with water, Amazon never adequately warned the Carls. Instead, Amazon actively promoted, endorsed, encouraged and recommended the purchase of the GardGuard water hose to the Carls.

23.     Amazon had control over both the GardGuard water hose and the very transaction that resulted in its sale to the Carls.[4] It constructed the digital marketplace on which the water hose was made available for sale, accepted Shandong/GardGuard as a third-party seller (as well the water hose), marketed and promoted Shandong/GardGuard's offer for sale, took possession of the water hoses in an Amazon warehouse prior to sale, accepted the Carls' order for the water hose, billed them for the purchase price, collected their payment, and prepared and packaged the water hose for shipping in Amazon-branded packaging, and shipped the water hose to the Carls' home.

---

[4] Amazon has said that, among its screening processes, it uses machine learning technology to identify risky sellers, as well as using investors to review applications.

24. Amazon created the environment and marketplace (i.e., Amazon.com) that allowed Shandong to offer the GardGuard water hose for sale. More importantly, Amazon attracted the Carls through its own activities and voluntary undertakings—including, but not limited to, its affirmative endorsement and recommendation of the subject hose as "Amazon's Choice" for expandable water hoses on its marketplace. Amazon set the terms of Shandong/GardGuard's involvement and demanded fees in exchange for its participation.

25. But for Amazon's own contributary acts, omissions and undertakings as described herein, its control over the water hose in question, and its marketing and transactional services related thereto, Plaintiffs would not have been injured.

## COUNT I – NEGLIGENCE
### (Amazon)

26. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-25 above, as if set forth at length herein.

27. As a digital marketplace providing extensive marketing and transactional services (including fulfillment, packaging, and screening services) leading directly to the Carl's purchase of the GardGuard water hose, Amazon owed a duty to exercise reasonable care in the operation of its commerce platform.

28. Amazon breached said duty and failed to exercise reasonable care in one or more of the following ways:

   a. by facilitating the purchase of an expandable water hose that it knew or should have known to either not contain warnings or to have contained inadequate warnings of notable dangers and child safety hazards that accompanied the use and handling of the hose—specifically, the potential for the water hose to quickly snap back and retract when pulled and/or released without any water in the hose;

   b. by not properly vetting, assessing, or inspecting the GardGuard water hose for warnings of notable dangers and child safety hazards that accompany the use and handling of expandable water hoses;

7

c. by featuring, promoting, and recommending the purchase of an expandable water hose from Shandong/GardGuard that it knew or should have known to either not contain warnings or to have contained inadequate warnings of notable dangers and child safety hazards that are not observable to the ordinary user—specifically, the potential for such water hoses to quickly snap back and retract when pulled and/or released without any water in the hose;

d. by failing to remove the GardGuard water hose from its marketplace prior to the Carls' purchase, despite knowledge that no warnings were provided concerning the potential for the water hose to quickly snap back and retract when pulled and/or released without any water in the hose; and/or

e. by fulfilling, packaging and shipping the GardGuard water hose to the Carls, despite knowledge that warnings of notable dangers and child safety hazards associated with handling expandable water hoses were not being provided or were inadequate.

29. As a direct, proximate, contributing and foreseeable result of Amazon's acts and omissions as plead herein, Plaintiffs have suffered damages, including, but not limited to, past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other special damages to be proven at trial.

## COUNT II – NEGLIGENCE
### (Amazon)

30. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-25 above, as if set forth at length herein.

31. Amazon actively and voluntarily undertook to feature, promote, endorse, and recommend the GardGuard water hose to the Carls as "Amazon's Choice" for expandable water hoses available for purchase on its online marketplace.

32. In furtherance of such undertaking, Amazon had a duty to employ due care and/or govern its actions as not to endanger the Carls or their property.

33. Amazon breached said duty in one or more of the following ways:

   a. by failing to reasonably inspect, vet, and/or assess the GardGuard water hose for warnings, child safety hazards, and/or instructions for safe use prior to featuring, promoting, endorsing, and recommending its purchase to the Carls as "Amazon's Choice" for expandable water hoses available for purchase on its marketplace;

   b. by failing to reasonably inspect, evaluate, and/or assess the GardGuard water hose for notable dangers and safety hazards not observable to the ordinary user prior to featuring, promoting, endorsing, and recommending its purchase to the Carls as "Amazon's Choice" for expandable water hoses available on its marketplace; and/or

   c. by featuring, promoting, endorsing, and recommending the purchase of an expandable water hose that it knew or should have known to either not contain warnings or to have contained inadequate warnings of notable dangers and child safety hazards that accompany the use and handling of the hose without water inside it.

34. The Carls would not have purchased the GardGuard water hose absent Amazon having actively featured, promoted, endorsed, and recommended it to the Carls as "Amazon's Choice" for expandable water hoses available for fulfilment and purchase.

35. As a direct, proximate, contributing and foreseeable result of Amazon's acts, omissions, and undertakings as plead herein, Plaintiffs have suffered damages, including, but not limited to, past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other special damages to be proven at trial.

## COUNT III – NEGLIGENT FAILURE TO WARN
### (Amazon)

36. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-25 above, as if set forth at length herein.

37. As a digital marketplace in the direct stream of commerce, Amazon had a duty to take reasonable measures to remove and/or protect against foreseeable hazards that it knew about or should have known about in the exercise of due care.

38. Despite having knowledge of and/or access to information showing the hazards associated with the use and handling of empty expandable water hoses, Amazon never warned, or never adequately warned, the Carls about the substantial and unobservable risk of injury associated with such use.

39. Amazon not only knew or should have known of the hazards associated with the use and handling of empty expandable water hoses but also knew or should have known that warnings of such hazards were either not being provided or were inadequate and that the injuries and harm described herein were a reasonably foreseeable consequence of such failure to warn.

40. Amazon's failure to warn, or to adequately warn, of notable child safety hazards and risks of personal injury not observable to the ordinary user when using and/or handling expandable water hoses not filled with water amounted to negligence.

41. As a direct, proximate, contributing and foreseeable result of Amazon's acts and omissions as plead herein, Plaintiffs have suffered damages, including, but not limited to, past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other special damages to be proven at trial.

## COUNT IV – INADEQUATE WARNINGS
### (Amazon)

42. Alternatively, Plaintiffs allege that Amazon is liable as a seller under Miss. Code Ann. § 11-1-63, i.e., the Mississippi Product Liability Act ("MPLA"). In doing so, Plaintiffs repeat and allege the allegations contained in ¶¶ 1-25 above, as if set forth at length herein.

43. At the time the GardGuard water hose purchased by the Carls left Amazon's possession and control, it was defective because it failed to contain adequate warnings of notable child safety hazards and personal injury risks that accompanied its use—specifically, the potential for the water hose to quickly snap back and retract at rapid speed when pulled and/or released when empty and not filled with water.

44. At the time the GardGuard water hose left Amazon's control and was supplied to the Carls, Amazon knew or in light of reasonably available knowledge should have known about the dangers that caused the damage for which Plaintiffs seek recovery.

45. Absent adequate warnings, an ordinary user or consumer would not (as evidenced here) realize the dangerous condition of the water hose.

46. Moreover, upon information and belief, Amazon exercised substantial control over an aspect of the water hose's packaging and labeling that caused the harm for which recovery of damages is sought.

47. As a direct, proximate, contributing and foreseeable result of Amazon's acts and omissions as plead herein, Plaintiffs have suffered damages, including, but not limited to, past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other special damages to be proven at trial.

## COUNT V – INADEQUATE WARNINGS
### (Shandong)

48. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-25 above, as if set forth at length herein.

49. Shandong is liable as a designer, manufacturer and/or seller under Miss. Code Ann. § 11-1-63, i.e., the Mississippi Product Liability Act ("MPLA").

50. At the time the GardGuard water hose purchased by the Carls left Shandong's control, it was defective because it failed to contain adequate warnings of notable child safety hazards and personal injury risks that accompanied its use—specifically, the potential for the water hose to quickly snap back and retract at rapid speed when pulled and/or released when empty and/or not filled with water.

51. At the time the expandable water hose left its control, Shandong knew or in light of reasonably available knowledge should have known about the dangers that caused the damage for which recovery is sought herein.

52. Absent adequate warnings, an ordinary user or consumer would not (as evidenced here) realize the dangerous condition of the water hose.

53. Shandong also exercised substantial control over an aspect of the design, testing, manufacturing, packaging, and labeling of the GardGuard water hose that caused the harm for which recovery of damages is sought herein.

54. As a direct, proximate, and foreseeable result of Shandong's acts and omissions as plead herein, Plaintiffs have suffered damages, including, but not limited to, past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other special damages to be proven at trial.

55. Accordingly, Plaintiffs specifically demand judgment against Shandong in the amount of $2,500,000.00, plus post-judgment interest.

## COUNT VI – DEFECTIVE DESIGN
### (Shandong)

56. Plaintiffs repeat and allege the allegations contained in ¶¶ 1-25 and 48-55 above, as if set forth at length herein.

57. Shandong is liable as a designer, manufacturer and/or seller under Miss. Code Ann. § 11-1-63, i.e., the Mississippi Product Liability Act ("MPLA").

58. The GardGuard water hose was defectively and negligently designed by Shandong to allow the water hose to quickly snap back and retract at rapid speed when pulled and/or released when empty and not filled with water.

59. The defective condition of the water hose rendered it unreasonably dangerous to foreseeable users, specifically children.

60. At the time the GardGuard water hose left its control, Shandong knew or in light of reasonably available knowledge should have known about this unreasonably dangerous aspect of the water hose that caused the damage for which Plaintiffs seek recovery.

61. At all relevant times, there existed a feasible design alternative that would have to a reasonable probability disallowed or otherwise prevented the water hose from snapping back and retracting at rapid speed when pulled and/or released when not filled with water.

62. As a direct, proximate, and foreseeable result of Shandong's acts and omissions as plead herein, Plaintiffs have suffered damages, including, but not limited to, past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other special damages to be proven at trial.

63. Accordingly, Plaintiffs specifically demand judgment against Shandong in the amount of $2,500,000.00, plus post-judgment interest.

## DAMAGES

64. Plaintiffs hereby adopt and incorporate the allegations contained and set forth in ¶¶ 1-63 of this Complaint.

65. As a direct, proximate, contributing and foreseeable result of Amazon and Shandong's acts, omissions, and undertakings as plead herein, Plaintiff Calvin Carl has suffered and seeks damages for the following:

(a) past, present, and future medical costs and expenses;

(b) temporary and permanent disfigurement;

(c) pain and suffering;

(d) mental anguish and emotional distress;

(e) past, present, and future loss of enjoyment of life; and

(f) disability.

66. As a direct, proximate, contributing and foreseeable result of Amazon and Shandong's acts, omissions as plead herein, Plaintiffs Jordan and Rachel Carl have suffered mental anguish and emotional distress, a loss of society and companionship of their minor child and seek damages for same.

## JURY TRIAL

67. Plaintiffs request a trial by jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment of, from, and against Amazon (in an amount to be determined by the jury), and separately and severally, against Shandong (in an amount of $2,500,000.00):

(i) For past, present, and future medical costs and expenses, disfigurement, pain and suffering, emotional distress, mental anguish, disability, loss of enjoyment of life, and loss of society and companionship;

(ii) For post-judgment interest at 8% per annum; and/or

(iii) For any and all further relief, both at law and at equity, to which this Court, in its discretion, may find Plaintiffs to be justly entitled.

RESPECTFULLY SUBMITTED, on this the 16th day of March, 2022.

                                              Plaintiffs, Jordan and Rachel Carl,
                                              individually, and on behalf of their minor
                                              child, Calvin Carl

By: /s/ Brannon Berry
     David Baria (MS Bar No. 8646)
     Brannon L. Berry (MS Bar No. 104811)
     COSMICH, SIMMONS & BROWN, PLLC
     544 Main Street
     Bay St. Louis, Mississippi 39520
     Direct: (601) 519-0328
     Email: david.baria@cs-law.com
     Email: brannon.berry@cs-law.com